--------
One brief only.
N. MARK KLAPPENBACH, Judge *459 Randall Teague appeals from the Arkansas Board of Review's (Board's) decision denying him unemployment benefits, finding that Teague was discharged for misconduct in connection with the work. We hold that the Board's finding of misconduct is not supported by substantial evidence; therefore, we reverse and remand.
The Board affirmed and adopted the Appeal Tribunal's decision; therefore, the Appeal Tribunal decision becomes the decision of the Board for purposes of appellate review. Law Offices of Craig L. Cook v. Dir., 2013 Ark. App. 741, 431 S.W.3d 337. Board decisions are upheld if they are supported by substantial evidence. Blanton v. Dir. , 2019 Ark. App. 205. Substantial evidence is such relevant evidence that reasonable minds might accept as adequate to support a conclusion. Id. We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. Id. Even if the evidence could support a different decision, our review is limited to whether the Board could have reasonably reached its decision based on the evidence presented. Id. However, our function on appeal is not merely to rubber-stamp Board decisions. Id. Whether a claimant undertook an act of misconduct sufficient to prevent the receipt of unemployment benefits is a question of fact. Id. In the unemployment-compensation context, misconduct is defined as (1) disregard of the employer's interests; (2) violation of the employer's rules; (3) disregard of the standards of behavior that the employer has a right to expect of its employees; or (4) disregard of the employee's duties and obligations to the employer. Id. To constitute misconduct, however, there must be the element of intent. Id. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good-faith errors in judgment or discretion do not constitute misconduct. Id. There must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design. Id. It is the employer's burden to establish misconduct by a preponderance of the evidence. Id.
Teague was a substitute teacher for Subteach from August 2017 until October 2018. Teague admittedly received a 2016 version of Subteach's substitute-teacher training manual, which did not contain a prohibition from interacting with students on social media. Teague was fired in October 2018 for having interactions with a male student on Facebook messenger. The employer's human-resources department informed Teague that this was in violation of the employer's policy against such communications. Teague filed a claim for unemployment benefits.
The employer filed an employer-statement form in connection with Teague's claim, reciting that Teague "resigned." The employer did not recite on the form that Teague had violated any company policy or any particular provision of company policy, nor did it state that Teague was ever informed of the company policy.
At the hearing before the Appeal Tribunal, only Teague appeared. The employer did not appear, although it had sent in four pages from the "ESS Employee Handbook 2018." Within the employer's "Social Media Expectations" is a provision on page twelve that recites: "4. Do not accept students as friends on personal social networking sites. Decline any student-initiated friend requests, and do not initiate any friend requests to students." Teague said he never received the 2018 ESS employee *460 handbook; he was hired in 2017 and said that he received only the 2016 substitute-teacher training manual. Teague testified that he knew the student's mother and was already friends with this student ("CS") before he was hired. Teague presented a screenshot of interactions, indicating that they had been friends dating back to 2016. The messages between Teague and CS showed Teague asking CS about school and playing football.
The Appeal Tribunal found that despite Teague's denial of having ever received the employer's policy on social media, "it is unreasonable that the employer would have withheld the social media policy" that "prohibited text messages and other forms of social media with students." The Appeal Tribunal found that Teague "did receive" the policy and concluded that Teague's actions "were not in the interest of the employer," constituting misconduct that disqualified Teague from unemployment benefits.
The policy at issue mandated that substitute teachers not initiate or accept friend requests from students on social-media platforms. Assuming Teague received the employee handbook, he did not violate this policy.[1] Teague did not initiate or accept a friend request from CS during his tenure as a substitute teacher. Teague had an existing social-media relationship with CS before being hired as a substitute teacher. Moreover, Teague was informed that he was fired for interacting with this student. Interactions, while perhaps impliedly prohibited, are not explicitly prohibited by this company policy.
Even if Teague's interactions constituted a violation of this company policy, ordinary negligence or good-faith errors in judgment or discretion do not constitute misconduct. Blanton , supra . The employee's violation must be intentional or deliberate, demonstrating a willful or wanton disregard or carelessness or negligence of such a degree or recurrence as to manifest wrongful intent or evil design. Id. The employer bore the burden to prove "misconduct" as defined in the unemployment context. Reasonable minds could not have concluded on this evidence that Teague committed misconduct to the degree required to disqualify him from unemployment benefits. Applying the proper standards of appellate review, we hold that the Board's finding of misconduct is not supported by substantial evidence.
Reversed and remanded.
It is difficult to reconcile the Appeal Tribunal's finding that Teague "did receive" the 2018 ESS employee handbook. Teague was hired in August 2017, he denied ever having received the handbook, the Appeal Tribunal made no findings on Teague's credibility, and the employer presented no evidence that Teague received the handbook.